JOHN H. KNAPP ET AL., Appellants, v. ST. LOUIS, KANSAS CITY, AND NORTHERN RAILWAY COMPANY, Respondent.

### November 12, 1878.

1. Under the act of March 21, 1873, a lien for labor or material cannot fixed upon a part only of the road-bed of a public railway.
2. Materials furnished for temporary structures only, and never incorporated in the permanent work, are not proper subjects, under the statute, for a lien upon the completed road-bed.

APPEAL from St. Louis Circuit Court.
*Affirmed.*

G. M. STEWART and H. E. MILLS, for appellants: **The** lien was properly filed upon that portion of the road covered

by the contract of the original contractor. — *Canal Co.* v. *Gordon*, 6 Wall. 561. The materials were proper subjects for the lien. — *Harlan* v. *Rand*, 27 Pa. St. 511 ; *Morrison* v. *Hancock*, 40 Mo. 561 ; *Weber* v. *Weatherby*, 34 Md. 656 ; *McCarty* v. *McCarty*, 49 Ill. 53 ; *Greenway* v. *Turner*, 4 Md. 296 ; *Allen* v. *Sales*, 56 Mo. 28 ; *Colliers* v. *Gest*, 47 Mo. 495 ; *Tucker* v. *Gest*, 46 Mo. 339.

WELLS BLODGETT, for respondent : A lien could not be enforced against a portion of the railroad.— *Cox* v. *Railroad Co.*, 44 Cal. 18 ; *Dunn* v. *Railroad Co.*, 24 Mo. 493 ; Sess. Acts 1874, p. 59. No lien can be had for materials used in temporary structures, and not incorporated into the permanent structure. — *Koenig* v. *Mueller*, 39 Mo. 168 ; *Haeussler* v. *Glass Co.*, 52 Mo. 452 ; *Graves* v. *Pierce*, 53 Mo. 423 ; *Holzhour* v. *Meer*, 59 Mo. 434 ; *Simmons* v. *Carrier*, 60 Mo. 581 ; *Fitzpatrick* v. *Thomas*, 61 Mo. 516.

LEWIS, P. J., delivered the opinion of the court.

This is a proceeding to establish a lien on the road-bed of defendant's branch railroad from Ferguson Station to Rock Springs in St. Louis County, on account of lumber furnished to the contractor for building the branch. It appeared from the contract shown in evidence that the contractor's undertaking was limited to the performance of earthwork, grubbing, clearing, excavating, and hauling. The testimony tended to show that the lumber was used in temporary constructions for the contractor's convenience in doing the earthwork, and never became part of the completed structure. Some of it was used in trestle-work upon which cars were run in filling up embankments, and this trestle-work was, in some instances, allowed to remain imbedded in the finished work. It does not appear, however, that this was necessary to the embankment as a structure, or that it had any object other than a saving of the labor of removal. It was admitted by the pleadings that the defendant's railroad extended from St. Louis to

Kansas City, and from Moberly to the Iowa State line ; that the branch under consideration was from Ferguson Station to the Union Depot in St. Louis, and that the lien was sought to cover two of the three sections composing the branch. The Circuit Court sustained a demurrer to the evidence, and the plaintiffs took a nonsuit with leave, etc.

Two questions are presented in this appeal: 1. Under the act of the General Assembly approved March 21, 1873, can a lien for labor or material be fixed upon a part only of the road-bed of a public railway? 2. Are materials furnished for temporary structures only, and never incorporated in the permanent work, proper subjects, under the statute, for a lien upon the completed road-bed? Both questions are comparatively new to Missouri jurisprudence.

As to the first, a good deal may be said against the apparent inutility of attaching a lien to several hundred miles of railway on account of labor or material furnished for a single bridge or culvert. It may seem altogether reasonable that if the laborer or material-man is satisfied with the security offered in that part of the structure to which he has contributed, the law should not compel him to ask for more. Something may also be said in favor of the general proposition that the lien should attach to the specific object only which the labor or materials have created or improved. But all such considerations must fail if not in harmony with the manifest intention of the Legislature, or if clearly contrary to public policy.

The act of March 21, 1873, provides that all persons who shall do any work or labor in constructing or improving the road-bed, rolling-stock, station-houses, depots, bridges or culverts of any railroad company incorporated under the laws of this State, or owning or operating a railroad within this State, and all persons who shall furnish ties, fuel, bridges or materials to such railroad company, shall have, for the work done and labor performed, and for the materials furnished, a lien upon the railroad-bed,

station-houses, depots, bridges, rolling-stock, real estate, and improvements of such railroad, etc.    Here is no division of the objects to which the lien is to attach.    The road-bed is mentioned as a unit and as a whole.    A literal construction admits of no application to a fractional part. It is as if a lien were given upon a house, excluding the idea of a lien upon one of its wings only.    If, however, we are to leave the domain of literal interpretation and find a meaning which differs from it in any degree, it must be because from the general policy and purposes of this act it is apparent the Legislature intended such a departure.    As to this particular feature, we find nothing in the law to warrant a deviation from the plain import of the words used. On the contrary, there is much in the policy of our general system of laws which seems to forbid it.

Railroad companies are chartered for the public convenience, in providing a means of travel between distant points. It would be fatal to the public needs if by means of liens and forced sales a road-bed could be divided into as many fractional ownerships as there were laborers employed in its construction.    The courts have pretty uniformly declared the policy of the law to be against the cutting up of a railroad into parcels for execution sales in the different counties through which it runs.    In *Macon, etc., Railroad Company* v. *Parker*, 9 Ga. 377, it was held that " to allow the road to be cut up into fragments, and separate portions sold at different sales in the different counties through which it passes, to different purchasers, would not only sacrifice the rights and interests of creditors, but defeat the objects and intentions of the Legislature in granting the charter."

The California statute which provides for liens upon railroads closely resembles ours in the features material to the present question.    In *Cox* v *Railroad Company*, 44 Cal. 18, the contract for building the entire road was let to McLaughlin, who sublet to Cox, Myers & Co.    The sub-

contractors completed one section, when, by reason of Mc-Laughlin's failure to perform on his part, they were released from further obligation. They instituted proceedings to establish a lien upon the finished section. Said the Supreme Court: "The statute, in our opinion, clearly contemplates that a lien, when it attaches, shall bind the whole structure. It would render the statute absurd to hold that one contractor or subcontractor could acquire a lien upon a bridge, another upon a tunnel, and a third upon a culvert, all of which constitute portions of a railroad. But that interpretation would do no greater violence to the intention of the Legislature than a construction which would permit a lien to be acquired upon each mile or section of the road."

The case of *Canal Company* v. *Gordon*, 6 Wall. 561, is here cited for the plaintiff, as sustaining a contrary view. That also was a California case, but the proceeding was under the statute concerning mechanics' liens on buildings, with a supplementary enactment extending its provisions to include ditches, flumes, or aqueducts constructed to create hydraulic power or for mining purposes. A canal company, having a part of a canal already made, employed contractors to construct an extension. The contractors afterwards filed their liens so as to cover the whole canal, and this action was sustained by decree of the Circuit Court. The United States Supreme Court reversed the decree, holding that the lien affected only the extension, or new canal. But this decision resulted, manifestly, from the peculiar language of the statute. This gave a lien to contractors and laborers upon the ditch or flume " which they may have constructed or repaired,   *   *   *   to the extent of the labor done and materials furnished." Here was a controlling limitation to which there is no parallel provision in either the California or the Missouri statute relating to liens upon railroads. But, notwithstanding this limitation, Justices Field, Miller, and Grier dissented; holding that

"the lien extends to the entire canal, as much so as a lien for work upon a wing of a house extends to the entire building."

We are of opinion that it is not within the intent of the statute under consideration to authorize a lien upon a part only of a continuous road-bed and its branches. Whether the same rule will apply to rolling-stock, station-houses, and other objects more easily divisible in their nature, need not be here discussed.

Upon the second question, also, we think the law is with the defendant. The theory of statutory liens of this class is that the laborer or material-man is entitled to a certain beneficial interest or security in the structure whose value is increased by his labor or materials actually incorporated therewith. There was in this case no such incorporation of the plaintiffs' lumber with the structure upon which they seek to fix a lien. Another rule is that the lien of a sub-contractor must be for something furnished within the terms of the original contract. Here the original contract was for labor only. It contained no provisions for the furnishing of any materials. If the fact be important that the lumber was used for facilitating the work, then a claim might be asserted with equal force in behalf of the maker and seller of the wagons, shovels, and other implements used by the contractor in making the road-bed. The judgment must be affirmed. All the judges concur.