UNITED STATES ex rel. SAMUEL HASTINGS CO. v. LOWRANCE et al.

(District Court, E. D. Arkansas, Jonesboro Division. November 28, 1916.)

1. MECHANICS' LIENS ☞5—LIEN LAW—CONSTRUCTION.

Mechanics' lien laws are to be liberally construed, for the purpose of protecting contractors, workmen, and materialmen.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 3, 5; Dec. Dig. ☞5.]

2. UNITED STATES ☞67(2)—CONTRACTS—BONDS—CONSTRUCTION—"MATERIAL."

The bond of a contractor, constructing a levee under contract with the United States, given under Act Cong. Aug. 13, 1894, c. 280, 28 Stat. 278, as amended by Act Feb. 24, 1905, c. 778, 33 Stat. 811 (Comp. St. 1913, § 6923), provided that the contractor should be responsible for paying all liabilities incurred for labor or material in the prosecution of the work. Plaintiff furnished a subcontractor feed for mules used in building the levee. *Held* that, while the act should be liberally construed as a mechanic's lien law, for the bonds required were to take the place of mechanics' liens, feed furnished for the mules did not fall within the purview of the bond, not being "material" used in the prosecution of the

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

work, as the animals would have had to have been fed, though not used in constructing the levee.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. ☞67(2).

For other definitions, see Words and Phrases, First and Second Series, Materials.]

At Law. Action by the United States, on the relation of the Samuel Hastings Company, against W. T. Lowrance and others. On demurrer to complaint. Demurrer sustained.

Marsilliot & Chandler, of Memphis, Tenn., for plaintiff.
Craft & McBee, of Memphis, Tenn., for defendants.

TRIEBER, District Judge. The plaintiff seeks to recover from the defendants W. T. Lowrance & Co. and their sureties on the bond executed to the United States under the provisions of Act Cong. Aug. 13, 1894, c. 280, 28 Stat. 278, as amended by Act Feb. 24, 1905, c. 778, 33 Stat. 811, for grain, hay, salt, and feed sold and delivered to a subcontractor of W. T. Lowrance & Co.

The material allegations in the complaint are that the principal defendants, W. T. Lowrance & Co., procured a contract from the United States for the construction of a levee, in this division of the Eastern district of Arkansas, and executed a bond, with their codefendants, M. J. Roach and C. T. Lowrance, as sureties, in accordance with the form prepared by the government officials, and in accordance with the requirements of the acts of Congress. Article 8 of the bond provides:

"The contractor shall be responsible for paying all liabilities incurred for labor and material in the prosecution of the work."

The proceedings are in conformity with the requirements of the act of Congress of 1905, but no other person than the plaintiff has made himself a party to this proceeding by filing a claim, although due notice, in the manner required by the act of Congress, was given.

[1, 2] Defendants demur to the complaint upon the ground that grain, hay, salt, and feed, which was fed to the horses and mules used by the subcontractor while engaged in the construction of the levee work, are not materials within the meaning of the act of Congress, and therefore there is no liability on the bond. That is the only question before the court.

There can be no doubt but that these acts should be as liberally construed as mechanic's lien laws, for, as stated by the Supreme Court:

"In view of the fact that it was evidently designed to furnish the obligation of a bond as a substitute for the security which might otherwise be obtained by attaching a lien to the property; said lien not being permissible in the case of government work." Guaranty Co. v. Pressed Brick Co., 191 U. S. 416, 24 Sup. Ct. 142, 48 L. Ed. 242; Hill v. American Surety Co., 200 U. S. 197, 203, 26 Sup. Ct. 168, 50 L. Ed. 437.

That mechanic's lien laws are to be liberally construed, for the purpose of protecting workmen, contractors, and materialmen, is the general rule, and especially in this circuit. Hooven, Owens & Rentschler Co. v. John Featherstone's Sons, 111 Fed. 81, 92, 49 C. C. A. 229, 240;

Russell v. Hayner, 130 Fed. 90, 64 C. C. A. 424; Mellon v. St. Louis Union Trust Co., 225 Fed. 693, 699, 140 C. C. A. 567, 575.

The only reported case which the court has been able to find in which the identical question was determined by any court under this act of Congress, and that was the act of 1894, is United States v. Fidelity & Deposit Co., 169 Ill. App. 1. In that case it was held, in a very carefully prepared opinion, reviewing numerous authorities, that such articles are not materials furnished in the prosecution of the work, within the meaning of this statute, and therefore no liability on the bond for them.

There are a number of decisions of the national courts, some by Circuit Courts of Appeals, others by Circuit and District Courts, which, while not directly in point, the material there furnished, and for which a recovery was sought on the bond executed under these Acts, being other than such as are involved in this action, yet in the opinion of the court the principles established in those cases are by analogy applicable to the question involved in the instant case. The last reported case on that question is National Surety Co. v. United States, 228 Fed. 577, 143 C. C. A. 99 (6th Cir.). In that case one of the questions involved was whether groceries and provisions furnished to a boarding house of a contractor, and consumed by his laborers while employed on the work under contract, were materials within the meaning of the act of Congress secured by the contractor's bond, and it was held that they were not. The opinion of the court is a very able one and reviews a large number of cases, theretofore decided. A petition for certiorari was denied by the Supreme Court. Brogan v. National Surety Co., 241 U. S. 670, 36 Sup. Ct. 721, 60 L. Ed. 1230.

Cases in which similar questions were involved and which counsel have cited to the court, are Standard Oil Co. v. City Trust Co., 21 App. D. C. 369; American Surety Co. v. Lawrenceville Cement Co., 110 Fed. 717 (C. C.); United States v. Morgan, 111 Fed. 474 (C. C.); United States v. Kimpland, 93 Fed. 403 (C. C.); United States v. Hyatt, 92 Fed. 442, 34 C. C. A. 445 (5th Cir.); City Trust, etc., Co. v. United States, 147 Fed. 155, 77 C. C. A. 397 (2d Cir.); Title Guaranty, etc., Trust Co. v. Puget Sound Engine Works, 163 Fed. 168, 89 C. C. A. 618; United States v. Illinois Surety Co., 226 Fed. 653, 141 C. C. A. 409. All of these arose under this same act of Congress, although some before the amendatory act of 1905, which in no wise affects the issues in this case.

In Standard Oil Co. v. City Trust Co., the material furnished, for which the claim was made, was lubricating oil used in the operation of a dredge, and it was held that, as the oil was used for the preservation of the dredge, and not for the purpose of doing any of the contracted work, the claim could not be sustained.

In United States v. City Trust Co., 23 App. D. C. 153, the same court disallowed a claim for coal furnished for the operation of a dredging machine employed in the work.

The correctness of these rulings is doubted by the United States Circuit Court of Appeals for the Second Circuit, in City Trust Co. v. United States, 147 Fed. 155, 77 C. C. A. 397, and in my opinion properly so,

as coal and oil used in operating the machinery employed for the purpose of performing the contracted work, and consumed at the time, may well be classed with the so-called "powder cases," hereinafter referred to.

In the Hyatt Case, it was held that a railway company, carrying stone to the place where the work was being done, was not entitled to maintain an action on the bond for freight charges.

In American Surety Co. v. Lawrenceville Cement Co., supra, claims for fitting out a steam launch used in transporting merchandise for the work contracted, the construction of dump cars, skips, grout tubs, and conveyors for use on the work, were held not materials within the meaning of the statute.

In United States v. Morgan, the following articles were held not to be within the meaning of the law; nails used for the construction of a camphouse, and repairs on a steam launch used for transporting material; construction of dump cars and other articles of a similar nature to those in the Lawrenceville Cement Co. Case; rails, spikes, and fish plates for a track to transport the earth and rock excavated; wire, steel, and rope for setting up and sustaining derricks for hoisting and excavating; material for sheds used for storing the articles used in the contracted work; tools, shafting, pulleys, and material of that nature used to operate the mixer of the cement; materials used in constructing sheds and premises for storing the material used.

In the Kimpland Case, board and lodging furnished laborers employed on the work was held not within the meaning of the act.

In Puget Sound Engine Works Case, a claim for patterns used for the castings which went into the vessel was made, and it was held that it should be allowed upon the same ground that the work of erecting scaffolding upon which carpenters stand in doing their work upon the actual construction of a ship entitles it to a lien.

In the Illinois Surety Co. Case, it was held that "this statute covers, not only labor * * * that goes directly into the completed structure, but all labor and material furnished 'in the prosecution of the work,'" and therefore rent for the use of cars employed in the performance of the contract are within the meaning of the act.

As it has been uniformly held that the bond provided for by these statutes is a substitute for the lien of the mechanic's lien laws (National Surety Co. v. United States, 228 Fed. loc. cit. 581, 143 C. C. A. 99), the construction placed upon such statutes, especially by the courts, which hold that such statutes should be liberally construed, justify a reference to these decisions, when the statutes construed employ language similar in effect to that used by Congress in this act.

When we come to examine these authorities, we find that the great weight of authority, if not all of them, hold that while powder and coal, and in some cases lubricating oil, used in the operation of machinery in the performance of the work, are materials entitled to the lien, the rule is otherwise as to materials not made a part of the work, or necessary for the prosecution of the work, and not consumed, while employed in the performance of the work, but which are used solely for the preservation of the machinery or materials. In such cases it

236 F.—64

has been uniformly held that there can be no lien claimed. Leading cases, in what are usually referred to as the "powder cases," are Schaghticoke Powder Co. v. Greenwich, 183 N. Y. 386, 76 N. E. 153, 2 L. R. A. (N. S.) 288, 111 Am. St. Rep. 751, 5 Ann. Cas. 443; Rapauno v. Greenfield Railroad, 59 Mo. App. 6; Giant Powder Co. v. Flume Co., 78 Cal. 193, 20 Pac. 419; Hercules Powder Co. v. Knoxville R. R., 113 Tenn. 382, 83 S. W. 354, 67 L. R. A. 487, 106 Am. St. Rep. 836; Giant Powder Co. v. Ry. (C. C.) 42 Fed. 470, 8 L. R. A. 700. That there can be no claim for articles not going into the construction and becoming permanent part thereof, or not consumed in the performance of the work, as are powder and explosives, and oil and coal for operating steam machinery employed in the work, the following are some of the many authorities: Armour & Co. v. Western Construction Co., 36 Wash. 529, 78 Pac. 1106; St. L., I. M. & S. Ry. Co. v. Love, 74 Ark. 528, 86 S. W. 395; Dudley v. Railroad, 65 Mich. 655, 32 N. W. 884; Stewart-Chute Lumber Co. v. Missouri Pacific R. R. Co., 33 Neb. 29, 49 N. W. 769; Basshor v. Baltimore & Ohio R. R. Co., 65 Md. 99, 3 Atl. 285; Knapp v. St. Louis, etc., R. R., 6 Mo. App. 205; O'Brien v. Guaranty Co., 159 Mich. 334, 123 N. W. 1127; Pennsylvania Co. v. Mehaffey, 75 Ohio St. 432, 80 N. E. 177, 116 Am. St. Rep. 746, 9 Ann. Cas. 305; Ferguson v. Despo, 8 Ind. App. 523, 34 N. E. 575; Carson v. Shelton, 128 Ky. 248, 107 S. W. 793, 15 L. R. A. (N. S.) 509. The reasoning in these cases is very convincing, but it will serve no useful purpose to quote from them, as they can be easily examined.

The coal and powder cases are clearly distinguishable from such cases as the one at bar. Explosives used in excavations of rock, or other hard substances, are substitutes for labor, which otherwise would have to be performed by workmen, and are entirely consumed in the prosecution of the work, leaving nothing for any other use. Fuel and lubricating oils used in operating machinery employed in the contract work are equally necessary for performing the work, as without them the machinery could not be utilized, and the work would have to be done by manual labor. They are consumed in the performance of the work, and are not necessary for the preservation of the machinery, as additions and repairs are, so that they may be preserved for use in other work undertaken at a later day. It is only when the materials furnished are necessarily incident to the performance of the contract that they are within the purview of the statute. Feed for mules cannot be distinguished from food and lodging for the laborers while employed on the work, and all authorities agree that the latter are not protected by the bond.

As stated in National Surety Co. v. United States, supra:

"These * * * cases stand on reasoning peculiar to themselves. The powder, or similar explosive, is a direct substitute for manual labor, and it is expended or used directly and immediately on the construction work."

Or, as stated in United States v. Fidelity Deposit Co., 169 Ill. App. 1, 6, in distinguishing the powder and coal cases from a case where feed is furnished for mules employed in the work:

"Coal purchased by a contractor doing such work would only be used in operating machinery, while engaged in actually prosecuting the work, but the teams would have to be fed, whether they were working or not."

In American Surety Co. v. Lawrenceville Cement Co., supra, the court, in distinguishing between these items of materials, said:

"The underlying principle which has governed the master is correct, in that he has discriminated between labor and materials consumed in the work or in connection therewith, and labor and materials made use of in furnishing the so-called contractor's plant, and available not only for this, but for other, work."

The demurrer to the complaint is sustained.